The first argued case which is KIPP Academy Charter School. Mr. Collins, you have a portentous name. I do indeed, Your Honor. So, as I'm often reminded, may it please the Court, Michael Collins, Bond, Chenick, and King for the plaintiff repellent, KIPP Academy Charter School. This is an appeal of an order that granted the motion of the United Federation of Teachers, and I'll use the term UFT to refer to them, to dismiss KIPP Academy's complaint for lack of subject matter jurisdiction under the Rooker-Feldman Doctrine. While that's the technical legal issue we hear before the Court today, this case has dramatic real-world implications for my client, KIPP Academy, a very high-performing charter school in the South Bronx, formed in 2000 pursuant to New York's Charter School Act to better serve underprivileged school children. KIPP employs approximately 85 educational professionals, and 800 children attend its classes, K-8. The dismissal for lack of subject matter jurisdiction was based on a misapplication of the second of the four required factors for Rooker-Feldman to apply. Namely, that a district court plaintiff must complain of the very injury that was caused by the prior state court judgment, and that is simply not the case here. Counsel, suppose we agree with you on Rooker-Feldman. Why doesn't res judicata apply, given a case that actually you don't cite, which is a New York case, Potter v. Motor Vehicle, 75 A.D. 2nd, 787, which says that Butch barred somebody under collateral estoppel in New York, even though a declaratory judgment was being sought. So in other words, in the same situation, I take it that the argument against res judicata was declaratory judgment might not have been able to be gotten, but you have a New York case directly on point from the appellate division that says so. And unfortunately, Your Honor, I'm not familiar with the case, and I apologize to the court for that. My understanding has been, for several reasons, the court should not even entertain at this juncture the res judicata and collateral estoppel arguments for, among other reasons, that it's not part of the notice of appeal. And generally speaking, as you well know, this court does not make decisions of first impression that have not been before the district court. We can affirm the district court on any ground. Yes, de novo review, absolutely, Your Honor, that's correct. Although I would, again, say that that would be, I think, unusual. And then there are other reasons that I believe, from a technical standpoint, why the doctrines, both res judicata and collateral estoppel, are not applicable here. Res judicata and both doctrines are equitable, and we contend that it would be fundamentally unfair in a situation like this to apply the preclusion doctrines when the appellee, in very opportunistic fashion, told the state court one thing, which is that this dispute is governed by New York state law. And then six or seven weeks later, went to the NLRB and invoked NLRB jurisdiction, which has to be a concession of federal jurisdiction, and said, we want to block the election that we think is forthcoming at KIPP Academy. That's the very kind of, and I hate to use the words, but opportunism and chicanery that is at odds with application of res judicata and collateral estoppel. In addition, the issue at the state court on an Article 75 TRO was strictly whether or not the court could issue a TRO or a preliminary injunction. The court went further and dismissed the entire claim without ever delving into, aside from the initial standard, whether a TRO or a PI should be preliminary injunction should be issued, went right to the heart and said, I'm dismissing the case. It's a decline to sign. If you want to get to the substance of the thing, isn't it the case that you went to state court, and that you lost in state court, and now you're just trying again in federal court, when in fact you could have brought up all the things that you're bringing up to us in state court. So you say, don't look to the technicalities, and I say, okay, I won't look to the technicalities, but why isn't this a case where you took one shot in one place, you could have come here directly, but instead you took one shot in one place, and you lost, and now you're trying to get another shot. Well, I'll pick up on one thing you said, Your Honor, which is we could have come here directly. This was precipitated by a decision by the NLRB called Hyde, which found that charter schools- In a case which dealt with new charter schools rather than old ones. So it didn't really do anything about you. Well, that's, Your Honor, in all due respect, that is an utterly meaningless distinction. There was nothing in Hyde that says anything about a conversion charter school. It says the reason we can take jurisdiction over this matter is because the people who founded the school and who operate the school are private actors, they're not a political subdivision of the state. There's nothing in Hyde that speaks to whether a conversion school matters. Frankly, it was a meaningless distinction, one that our opponents seized upon, and that the state court unfortunately bought, but if you read Hyde, there's nothing in there. The Popson's choice, though, was that was a new decision, and we weren't sure, frankly, because it was new, whether or not to go to federal court or state court. We received a demand for arbitration from them, and as you know, under the CPLR, if you don't do anything, there are implications or ramifications, and you can be penalized. So if you sit on your hands, and that's the injury that we complain of, you are in trouble. So we made a choice, and we went to state court, and in hindsight, perhaps that was not a good choice, but it is the choice that we made. We believe this controversy is not identical. It arises out of the same facts, but that doesn't make it the exact same controversy. There have been new factual developments here, which also counsel against the application of the preclusion doctrines, which are NLRB charges, a blocking charge by the UFT, a charge by us, and this flip in positions, which, frankly, is inexplicable and very opportunistic. So to get back to the initial point on Rooker-Feldman, I think it's pretty clear that this was not the KIPP Academy complaining of injuries caused by a state court judgment. The injury was extant prior to and totally independent of what the state court did. The arbitration thing, which was before, and so Rooker-Feldman under recent cases would not apply. That's correct, Your Honor. Excuse me one second. The other point, and I know to say that we had a full and fair opportunity to litigate on a TRO when we showed up at court, and it is, in essence, an ex parte proceeding. You're required to give a phone call to your adversary, but it's not the same as a motion on notice. They can show up or not. They're not a hearing? There was about a 15 minute oral argument, Your Honor, and the other side was not even required to submit papers. So we never got an opportunity to even respond to their arguments. They were made extemporaneously, and then we got a decision dismissing the entire case. So I'm out of time, and I'll use my rebuttal time. Thank you. May it please the court, Oriana Vigliotti representing the United Federation of Teachers. It is elementary civil procedure, as Your Honors have pointed out, that KIPP cannot now re-litigate in federal court the same claims and issues that it brought and lost in state court. KIPP Academy Charter School sought a temporary and permanent stay of arbitration. Do you agree that the Rooker-Feldman Doctrine really doesn't apply here? I don't agree.  I'm puzzled by that. Go ahead. Okay. So under the Rooker-Feldman Doctrine, the state court decision has to be the cause of the injury. And here, the state court decision denying the stay of arbitration is what caused KIPP's injury. The injury is the arbitration. A demand for arbitration doesn't cause anyone any injury. It's simply putting you on notice that there will be an arbitration in the future. It's akin to filing a notice of claim. It doesn't have any – nothing happens when you file the demand for arbitration. It's the arbitration that KIPP is complaining about that's harmed them. And the state court decision denying their stay is what forced them to then go to arbitration, which – Are you saying that essentially what injured them was the declaratory judgment that arbitration could go forward? And that you're – so that you're either in a situation of saying that the state couldn't do a declaratory judgment but what it did was the injury and therefore Rooker-Feldman, or if it could do it, then they didn't ask or didn't do, and then it's precluded. That is, they can't have it both ways. That's exactly correct, Your Honor. The denial of the stay of arbitration is what caused the arbitration to happen. Had the UFT filed a demand for arbitration and KIPP not made a motion for a stay and the UFT not made a motion to compel, nothing would have happened. It was the denial of the stay that caused the injury. And as this court held in von Mack, it doesn't matter. I mean, I think that this is clearly barred by Rooker-Feldman, but race judicata and collateral estoppel bar this case as well. It's the same cause of action. The declaratory judgment that they're asking from the federal court is really a declaratory judgment in name only. If you look at their complaint, it's paragraph 36, they want a declaratory judgment declaring KIPP has no obligation to participate in the grievance procedure, no obligation to arbitrate. They want a permanent stay of arbitration, and that's exactly what they asked of the state court, and the state court said no. And they've also argued that, excuse me, somehow that collateral estoppel doesn't bar this case, but it does, because in this case, the issues are identical. Is the UFT the collective bargaining representative? Yes. Is there an obligation to arbitrate? Yes. It's the same thing in the state court. It's already been decided. The last argument that they make is an argument grounded in equity. Correct. And they point out that you have flip-flops, so can you respond to that? Yes. That is simply not true. It has been the UFT's position since the inception of this litigation that the UFT is the collective bargaining representative of the KIPP teachers, and it's not only been the UFT's position that they're the collective bargaining representative of the teachers, it's been the position of PERB in the 2012 decision in matter of Corcoran. They decided the issue. The UFT represents the teachers. The state court decision found the same thing. The UFT represents the teachers, thus the arbitration has to go forward. They make the argument that collateral estoppel and res judicata don't apply because something new has happened, and I'd like you to address the Heinz case and whether that is new in that. Okay. So it isn't. Nothing new happened. What happened is that in the face of an unlawful decertification petition that was supported by KIPP Academy management and circulated amongst the teacher by management, the UFT in the face of this decertification petition that was to be filed and was filed at the NLRB, the UFT filed an unfair labor practice charge alleging that this was an unlawful interference, and so because KIPP chose, excuse me, because the decertification petition was filed at the NLRB, the UFT had no choice but to file the blocking charge at the NLRB. And it doesn't matter. Number one, Hyde didn't talk about conversion charter schools, and Hyde doesn't determine this issue because what happened under Hyde, when the National Labor Relations Board took jurisdiction over non-conversion charter schools, they weren't abrogating collective bargaining relationships for conversion charter schools. It's happened, I mean, the NLRB has taken jurisdiction before over state court collective bargaining, state collective bargaining relationships that have been certified by state boards, and the NLRB, when they take jurisdiction, they can extend comedy to the state board certification of the collective bargaining representative. It doesn't mean that simply because the board, I don't concede that the board took jurisdiction of conversion charter schools, but even if they did, it doesn't abrogate this collective bargaining representative of the UFT. So the, I mean, that, yes. Make sure that I understand with respect to the flip-flop, which bleeds into the additional evidence issue. Is it not the case that in state court, the UFT took the position that the NLRA was not applicable? We took the position that Hyde didn't determine under conversion charter schools the jurisdiction issue. We took the position that Hyde simply talked about non-conversions and that it didn't apply to conversion charter schools. I mean, we've taken the position the entire time and continue to take this position at the National Labor Relations Board, which has processed the ULP charge, that the UFT is the collective bargaining representative. We've never taken a different position, and simply by virtue of the decertification petition being filed at the NLRB, we filed an unfair labor practice charge based on the unlawful actions of KIPP. Well, if the court doesn't have any other questions, the district court decision should be affirmed. It can be affirmed under the Rooker-Feldman doctrine. The injury was caused by the state court decision denying the stay, and as I said initially, this is elementary civil procedure, that you can't go first to state court and lose and then come to federal court and get a second bite at the apple asking for the exact same relief under the same causes of action. Thank you. Mr. Collins, you reserve two minutes. Thank you, Your Honor.  One, the idea that had we not gone to court, nothing would have happened, that an arbitration demand is somehow meaningless is simply fiction. What would have happened? Well, first of all, by operation of law under CPLR 7503, if you don't do anything, there are repercussions. Secondly, and even more importantly, if you sit on your hands, and we actually asked both the UFT and the AAA to stay the arbitration, they declined to do so, and therefore the arbitration was proceeding unabated, we could have not, I guess, decided not to show up, and that would have resulted clearly in a default judgment and an award to the UFT. The second point is that, well, comedy was mentioned, and the Board does extend comedy, but I'm aware of no case in the Board or the federal courts in which a union has been certified by the Board where there has never been a vote by the majority, and that's the case here. The KIPP teachers have never been able to vote. Finally, to say that... But what does that say about this case? I mean, are you saying that they are not the collective bargaining unit? That they were not the collective bargaining unit because somehow the original thing was not right? I don't understand the relevance of what you're telling me to the issue that is before us. Once the NLRA jurisdiction, or the NLRB said that the Board has jurisdiction, we're now under a different scheme, and there are times when the Board will extend comedy where there's already been a state law finding of lawful representation, but I'm not aware of that ever happening where there hasn't been any vote that showed majority support, which is the case here. So about the facts on the ground, if you prevail here, where does that leave the parties? We would be back at district court trying to develop a record to show, I guess they would claim that collateral estoppel and res judicata should apply. What would you be claiming in the district court? We would be claiming that based on the new evidence and the flip-flop that those doctrines should not be applicable and that we should be entitled to proceed. What do you mean by the flip-flop? Could you just explain to me? Yes, Your Honor. The flip-flop is in state court they said... Oh, they're going to the NLRB. After the fact. Correct, Judge. I understand. I just wasn't sure. That's what I meant. Thank you very much, Mr. Collins. Thank you, Your Honors. Well argued by both sides, and we appreciate it.